J. Robert Lynch, J.
This is an action to recover first-party benefits reimbursing the plaintiff for basic economic loss arising from personal -injuries alleged to have" been caused by a motor vehicle. (See Insurance Law, art. XVIII, Comprehensive Automobile Insurance Reparations Act, the new “ no-fault ” law.) Both sides have moved for summary judgment. The facts are undisputed.
Josephine Pantola had parked her automobile for the night on the street in front of her house in the Village of New York Mills. She was in the house, the car was unoccupied. It was insured with no-fault coverage by the defendant. At 11 that night the Pantola car was struck by a snowmobile operated by the plaintiff who received extensive injuries.
The no-fault statutes provide first-party benefits to persons, “ other than occupants of another motor vehicle ”, for loss ‘ ‘ arising out of the use or operation ” "of a motor vehicle (Insurance Law, § 672, subd. 1, par. [a]). The defendant has raised the defenses, claimed ineffectual by the plaintiff, that: the plaintiff was the occupant of another motor vehicle, a snowmobile; the loss did not arise out of either the use or the operation of the Pantola car.
The no-fault law defines a motor vehicle as it is defined in section 311 of the-Vehicle and Traffic Law, excepting only from the latter definition fire and police vehicles and motorcycles (Insurance Law, § 671, .subd. 6). Subdivision 2 of section 311 in turn refers the definition to section 125 of the Vehicle and Traffic Law which specifically excepts snowmobiles. The plaintiff, therefore, would not be an occupant of another motor vehicle under the no-fault law.
The defendant would have us construe ‘ ‘ motor vehicle ’ ’ in the no-fault law to mean that snowmobiles are excluded from the definition only to dispense with ti|e necessity for no-fault, coverage on them, but that they should be included where the reference is to being an occupant of “ another motor vehicle ”. Where a. phrase is statutorily defined, we must assume, that the Legislature intended it to be so defined in each place it is met in the statute.
The plaintiff concedes that the, Pantola car was not being operated at the time of the accident. His claim is that the car, being parked on the public street, was being used at the time.
Wlien the Legislature employed the expression “ use or operation ” of a motor vehicle in section 672 of the Insurance Law, it adopted an expression common in motor vehicle statutes. .An- owner of a vehicle “ used or operated ” in this State is liable *221 for injuries resulting from negligence in the “ use or operation ” by certain drivers (Vehicle and Traffic Law, § 388). The “ use or operation ” by a nonresident of a vehicle in this State is equivalent to an appointment by him of the Secretary of State as an agent upon whom a summons may be served (Vehicle and Traffic Law, § 253).
The words “use” and “operation” are not synonymous (Feitelberg v. Matuson, 124 Misc. 595; Wahler v. Thompson, 36 Misc 2d 847, mod. on other grounds 26 A D 2d 895, app. withdrawn 20 N Y 2d 765). To illustrate, chapter 568 of the Laws of 1958 amended section 253 of the Vehicle and Traffic Law (then § 52) to add the word “ use ” to the word “ operate ” to extend its application “ to cases where the use of the vehicle in this state, during the course of which the accident occurs, is not technically an 1 operation ’ of the vehicle under the narrow construction given to the term 1 operate ’ by some decisions” (1958 Report of N. Y. Law Rev. Comm., p. 631). The purpose of the amendment was to broaden the category of those included in the section beyond those who are literally driving the ear (N. Y. Legis. Doc., 1958, No. 65 [H]).
Section ,388 of the Vehicle and Traffic Law has been interpreted with “ the word ‘ operating ’ signifying the personal act of worMng the mechanism of the vehicle, whereas the word ‘ using ’ merely signifies control over the operation of the vehicle other than by the personal act of worMng the mechanism ” (4A N, Y. Jur., Automobiles and Other Vehicles, § 876).
A driver found seated alone in a drunken state in his automobile with the engine running was convicted of “ operating ” a motor vehicle in an intoxicated condition (People v. Blake, 5 NY 2d 118; see, also, 37 Albany L. Rev., p. 676, n. 75). “ Operating a motor vehicle ’ ’ has been held to be a broader expression than “ driving a motor vehicle ” (Matter of Prudhomme v. Hults, 27 A D 2d 234, 236) and thus-a passenger in a taxicab who opened its door on the street side was deemed to have been “ operating ” the vehicle (Lynton v. Metcalf. 68 Misc 2d 779).
Where a defendant lent his car to his nephew, instructing him not to let any other person drive it and the nephew permitted another to drive and he himself was a passenger, he was held, to have been “using ” the car (Arcara v. Moresse, 258 N. Y. 211; see, also, Wahler v. Thompson, supra). Where the defendant’s tractor trailer was parked at the plaintiff’s employer’s loading dock and the plaintiff was injured while unloading it, the accident arose out of the “ use ” of the vehicle (Aranzullo v. Collins Packing Co., 18 A D 2d 1068, affd. 14 N Y 2d 578). *222 Where oil was being pumped from a truck to a ship and the plaintiff slipped on an accumulation of oil, the accident was held to have arisen from the “ use ” of the truck (Landolphi v. Wilhelmsen, 39 Misc 2d 950).
All of the cases we have .read involving the use of a motor vehicle have had within them some on-going activity related to the vehicle, e.g., it was being employed by a passenger or it was being unloaded. This conforms to the dictionary definition of “ user ” as being “ the actual exercise or enjoyment of1 any right or property ” (Black’s Law Dictionary [4th ed.], p. 1711; italics supplied). In no case has the locus of the vehicle been the sole determinant of user, although we can conceive situations where it might be an important factor. There being at the time of the accident no actual exercise or enjoyment of Mrs. Pantola’s car by anyone, the accident cannot be held to have arisen out of its use.
It is argued that the intention of the no-fault law is to provide fir.st-party benefits to anyone injured in an accident “ involving ” a motor vehicle and therefore the word “ use ’ ’ should not be restricted to defeat the purpose of the statutes. There are two answers to this. First, article XVIII of the Insurance Law has no declaration of legislative intent nor have we found this broad intention in any study leading to this particular legislation. Second, the Legislature is deemed to have intended that which it has clearly stated and the “ court cannot, through construction, enact an intent the Legislature totally failed to express ” (McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 92, subd. b).
Summary judgment must be granted in favor of the defendant dismissing the complaint.