■ In the Matter of the Arbitration between W. M. GIRVAN, INC., Appellant, and NICHOLAS M. ROBILOTTO, as President of Local 294, International Brotherhood of Teamsters, Chauffeurs, Warehousémen and Helpers of America, Respondent. — Appeal from a judgment of the Supreme Court at Special Term, entered in Albany County on May 23, 1972, which denied petitioner's application, pursuant to CPLR 7511, to vacate and set aside an award of an arbitrator and granted respondent's cross-application, pursuant to CPLR 7510 and 7514, to confirm the award of the arbitrator. Appellant is a contract carrier of merchandise and supplies to stores of a retail chain organization in northeastern New York and adjacent areas of Massachusetts, Vermont and Connecticut. Respondent is president of a labor union which represents appellant's drivers and helpers. Appellant and the labor union entered into a collective bargaining agreement covering the period from October 1, 1970 to September 30, 1973 which in part provided: "The Employer shall not discharge nor suspend any employee without just cause, but in respect to discharge or suspension shall give at least one (1) warning notice, in writing, of the complaint against such employee to the employee and a copy of the same to the Union and the job steward. No warning notice need be given (1) if an employee is discharged for dishonesty involving theft". On July 1, 1971 appellant was advised by its customer that there was a shortage in the delivery of clams to one of its stores. Appellant's president, having ascertained the identity of the truck charged with making the complained of delivery and the employees in charge thereof, observed the vehicle pull into a diner parking lot near appellant's plant. He witnessed

the employees unload boxes from the truck and place them in a station wagon owned by one of the employees. Stepping up to the station wagon and identifying the boxes as the kind used by the chain for shipping foodstuffs, he ordered the employees to report to the terminal where he discharged them. The union protested the dismissals and demanded arbitration to determine whether the company acted properly under the agreement. The arbitrator found that the employer failed to supply sufficient proof to sustain a finding of malfeasance against the workers, that the investigation made by the employer's president was cursory, that the items the president believed might have been in the containers were not specifically reported by the customer to be missing, that the record contained nothing to show there were clams in the boxes, that in effect the company failed to establish satisfactorily the " Corpus Delicti " and that, therefore, it would be improper to label the two men with a serious misconduct. Significantly, the arbitrator observed that the two employees denied all elements of the testimony of appellant's president which could be construed as implicating them in a misappropriation of the customer's property. Court review of an arbitrator's award is a most limited one (CPLR 7511, subds. [b], [c] and such an award is not reviewable by a court for errors of law or fact (*Matter of Colony Liq. Distrs. [Local 699, Int. Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of Amer.*], 34 A D 2d 1060, 1061, affd. 28 N Y 2d 596; *Matter of Colletti [Mesh]*, 23 A D 2d 245, 248, affd. 17 N Y 2d 460). However, an award will be vacated where an arbitrator exceeded his power by giving " a completely irrational construction to the provisions in dispute and, in effect, made a new contract for the parties " (*Matter of National Cash Register Co. [Wilson]*, 8 N Y 2d 377, 383) or by giving a " perverse misconstruction " (*Matter of Wilkins*, 169 N.Y. 494, 496–497). In view of the lack of definite proof as to the ownership of the boxes, the absence of proof of the existence of clams in the boxes and the question of whether there was the requisite felonious intent (see Penal Law, § 155.05; *People ex rel. Perkins* v. *Moss*, 187 N. Y. 410, 419–420), it cannot be said that the arbitrator committed more than an error of law or fact if, indeed, there was such an error. The arbitrator did not construe " theft " or " dishonesty involving theft " but, rather, found in effect that there was " insufficient proof " to sustain a finding of theft and that the employer had failed to " satisfactorily establish " it. Since " improper conduct " was found, in that the employees by their overall demeanor did give " rise to a valid suspicion that something was amiss and that they had been doing things inconsistent with their job responsibilites and obligations ", the workers were given suspensions. As the arbitrator did not find " dishonesty involving theft ", he was not required to discharge the employees. When an arbitrator is commissioned to interpret and apply a collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem, this being especially true in formulating remedies, since there is need for flexibility in meeting a wide variety of situations and since the draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency (*Steelworkers* v. *Enterprise Corp.*, 363 U. S. 593, 597). Judgment affirmed, without costs. Staley, Jr., J. P., Cooke and Simons, JJ., concur; Sweeney and Kane, JJ., dissent and vote to reverse in the following memorandum by Kane, J. Kane, J. (dissenting.) We recognize and support the sound legal principle that court review of an arbitrator's award is limited and cannot be set aside for errors of judgment as to the law or the facts. However, if an arbitrator exceeds his power and goes outside of the provisions of the collective bargaining agreement, the result is a divestiture of jurisdiction (*Steelworkers* v. *Enterprise Corp.*, 363 U. S. 593; *Matter of*

*National Cash Register Co.* [*Wilson*], 8 N Y 2d 377). A review of some of the findings of the arbitrator demonstrates that he rendered an irrational construction of the agreement. Regarding the investigation of appellant's president, he found that "Mr. Hall gave a complete and honest report on his observations of that day". He further found that "the two grievants denied all elements of Mr. Hall's testimony which could be construed as implicating them in a misappropriation of customer property". The arbitrator therefore believed that the two grievants unloaded boxes from a company truck and placed them into a station wagon owned by one of them. No explanation was offered by the grievants but rather they chose to deny the very occurrence which the arbitrator found to be fact. Notwithstanding the failure to explain and the obvious conclusions as to credibility, the arbitrator concluded that there was no dishonesty involving theft, although he commented "However by their conduct and their overall demeanor on that day, the grievants did give rise to a valid suspicion that something was amiss and that they had been doing things inconsistent with their job responsibilities and obligations". We believe that this determination was a perverse misconstruction of the agreement (*Matter of Wilkins,* 169 N. Y. 494; 496). To arrive at this result the arbitrator went beyond the terms of the agreement and the obvious intentions of the parties to that agreement. He required the employer to establish a corpus delicti (to prove that clams were in the boxes in question) and to show that these items were specifically reported as missing by the customer (apparently referring to past shortages), and in doing so he substituted his own notion of "proven theft" for the agreed words "dishonesty involving theft". In this respect he rewrote the agreement (*Steelworkers* v. *Enterprise Corp., supra,* p. 598). Further indicative of the dispensing of his own brand of industrial justice is the arbitrator's closing caveat: "Although I am affording them reinstatement, I am putting them on notice that similar activities in the future may not bring a similar result". This apears to constitute the warning which was not included in the collective bargaining agreement for this type of conduct. The order appealed from should be reversed, and the cross motion to vacate the award granted.