OPINION OF THE COURT
Thomas E. Mercure, J.
This case presents a novel issue on the applicability of the No-Fault Law.
Defendants move for summary judgment pursuant to CPLR 3212 upon the grounds that there are no triable issues of fact and that there is no merit to the cause of action asserted in the complaint herein in that plaintiff has failed to allege “a serious injury”, pursuant to the Comprehensive Automobile Insurance Reparations Act (Insurance Law, § 673, subd 1; see, also, CPLR 3016, subd [g]). Plaintiff responds that no such allegation is necessary since the cause does not fall within the purview of the automobile No-Fault Law as “arising out of negligence in the use or operation of a motor vehicle” (Insurance Law, § 673, subd 1).
The facts are as follows: On the morning of January 28, 1981, the defendant, Macey, was directed by his employer, Madden’s Transfer and Storage, Inc., to take its crane truck to Maple Street in the Town of St. Armand, County of Essex, to retrieve two telephone company reels that were located in a field off the south side of Maple Street and to bring them back to Madden’s storage yard for further transshipment to the storage yard of the New York Telephone Company in Syracuse. The defendant, Macey, drove *257 the crane truck to Maple Street and drove it into the field off the south side of Maple Street. Macey used the winch system on the crane truck to place the two reels on the truck and, in the process of operating the truck to return to Madden’s storage yard, the crane truck got stuck in the snow, 25 feet south of Maple Street.
Defendant, Macey, decided to utilize the crane truck’s winch system to free itself from the snow. He thereupon stretched the cable from the boom on the truck across Maple Street to the only available tree, attached the cable to a chain he had wrapped around the tree and returned to the crane truck. After the winch system was connected to the tree and while Mr. Macey was getting organized to effectuate this maneuver, the truck engine stalled and the engine stopped. Defendant Macey re-entered the cab of the truck and restarted the truck engine in order to have a source of power to operate the winch system. Mr. Macey then climbed onto the back end of the truck where the winch system controls were located and energized the winch to tighten up the slack part of the cable.
After the cable had been tightened by the winch system and while defendant Macey was still on the back end of the truck, plaintiff, operating his motor vehicle in a westerly direction on Maple Street, came into contact with the winch system cable and came to an abrupt stop. The contact of plaintiff’s motor vehicle with the winch system cable of the Madden’s cable truck is the accident upon which this present lawsuit is based.
Defendants move for summary judgment because plaintiff has not alleged — as required by CPLR 3016 (subd [g]) — that he has sustained either (1) a serious injury, or (2) economic loss greater than his basic economic loss. At the time of this accident, the plaintiff, Donaldson, was a “covered person” as defined at subdivision 10 of section 671 of the Insurance Law and, in fact, plaintiff sought and received “no-fault” benefits for this accident. The cable truck owner and its operator, the defendants herein, were each a “covered person” within subdivision 10 of section 671 of the Insurance Law. Defendants aver that plaintiff’s action is barred because “in any action by * * * a covered person against another covered person for personal injuries aris *258 ing out of negligence in the use or operation of a motor vehicle in this state, there shall be no right of recovery for non-economic loss, except in the case of a serious injury, or for basic economic loss” (Insurance Law, § 673, subd 1).
Defendants argue further that, at the time of the accident, defendant Macey was using and actually operating his cable truck motor vehicle, that the truck was being used in the capacity for which it was intended, to wit: the transporting of goods; that the operator was in and upon his truck and conducting a function integral to use and operation by trying to return it to service by freeing it from the snow where it was stuck.
Plaintiff admits that he did not sustain injuries which could be termed a “serious injury”, as defined in subdivision 4 of section 671 of the Insurance Law. Plaintiff’s verified bill of particulars indicated that he sustained the following injuries:
(1) “whip-lash” type injury to his neck;
(2) contusion of right knee;
(3) myofaschial strain syndrome of cervical spine.
Plaintiff argues that he relies on common-law negligence against the defendants for obstructing the highway. Plaintiff avers that the fact the obstruction was a cable and chain attached to a vehicle some 25 feet off the highway does not bring the cause of action within the damage strictures of the No-Fault Law.
The question is whether the cable truck was being used or operated as a motor vehicle at the time of the accident.
Defendants’ motion must be denied. Use or operation is not broad enough to include any use for which the vehicle was designed. “The no-fault coverage required by the statute applies for use of the motor vehicle qua motor vehicle, not the use of equipment built into the vehicle to serve some other function”. (Reisinger v Allstate Ins. Co., 58 AD2d 1028, affd 44 NY2d 881; also see McConnell v Fireman’s Fund Amer. Ins. Co., 49 AD2d 676; United Servs. Auto. Assn. v Aetna Cas. & Sur. Co., 75 AD2d 1022; Matter of La Cova v Allstate Ins. Co., 99 Misc 2d 678; 12 Couch, Insurance 2d, § 45:47.)
*259 In Reisinger (supra) and La Cova (supra), plaintiffs were injured when gas stoves in their vehicles exploded. At the time of Mrs. Reisinger’s accident, her motor vehicle was parked in a campground and she was cooking breakfast. At the time of Mrs. La Cova’s accident, her trailer was parked and being operated as a hot dog vending stand at a street festival.
In McConnell (supra), plaintiff struck a locked and unoccupied automobile which was parked in the street in front of its owner’s residence. The court concluded that it was not being used within the meaning of the Insurance Law. In United Servs. (supra), as an automobile was being used to transport six children on a field trip, one boy hit another in the eye with a “spit ball”. The court held that this occurrence did not arise out of the “ownership, maintenance or use” of the motor vehicle.
Contra to the foregoing cases is Yanis v Texaco, Inc. (85 Misc 2d 94). In Yanis, a fuel truck was delivering oil to a multiple dwelling and in so doing, its fuel hose extended from the truck across the public sidewalk to the building. The engine was running so that the oil could be pumped out of the truck; the delivery man was not ensconced in his usual position as a driver. The plaintiff, a pedestrian, was injured when she tripped over the hose while she was traversing the sidewalk. The court held that, since an oil-delivery truck was engaged in its own particular use, namely, to deliver oil, there was an on-going activity relating to that purpose and that, therefore, this could constitute a “use” to call for the mandatory requirements of the “no-fault” statute.
At the time of this accident, defendants’ truck was not being used “qua a motor vehicle”. There was no one ensconced in the usual position as driver, the defendant, Macey, being in the back of the truck. The engine was running in the truck for the sole purpose of giving power to the winch. The truck was not on a public highway.
Defendants’ motion for summary judgment is denied.